UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OMAR ALEJANDRO VASCONCELOS
RUIZ,

      *Petitioner,*

v.                                                                    Case No. 3:26-cv-1227-JEP-SJH

WARDEN, NORTH FLORIDA
DETENTION CENTER, et al.,

      *Respondents.*

_____/

## <u>ORDER</u>

Petitioner, a detainee of the United States Immigration and Customs

Enforcement ("ICE"), filed a pro se petition for a writ of habeas corpus under

28 U.S.C. § 2241 on May 11, 2026. (Doc. 1).[1] Petitioner argues that his

---

[1] At the time Petitioner filed this case, he was housed at Baker Correctional
Institute in Sanderson, Florida. (Doc. 1 at 1). According to ICE's website, he is
currently housed at a detention facility in California. *See* Online Detainee Locator
System, ICE, available at https://locator.ice.gov/odls/#/search (last visited July 15,
2026). Because Petitioner was detained within the Middle District of Florida when
he filed this case, this Court retains jurisdiction despite his transfer. *See Rumsfeld v.
Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner
after she properly files a petition naming her immediate custodian, the District Court
retains jurisdiction and may direct the writ to any respondent within its jurisdiction
who has legal authority to effectuate the prisoner's release."); *see, e.g., Elcock v.
Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the
initial filing of the § 2241 petition and will not be destroyed by a petitioner's
subsequent Government-effectuated transfer and accompanying change in physical
custodian. . . . [I]f a § 2241 petition must be transferred every time the petitioner is
transferred, it is doubtful that the case would ever be decided.").

prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. 1 at 6–8). He asks the Court to order his release. (*Id.* at 8).

The Federal Respondents filed a response in opposition to the petition. (Doc. 3). According to the Federal Respondents, Petitioner has impeded his removal and thus, he "has no *Zadvydas* claim." (*Id.* at 9; *see id.* at 10–11). The Warden filed a motion to dismiss, arguing he is not a proper respondent in this case. (Doc. 5). Petitioner did not file a reply. Upon review of the parties' filings, the Court finds that the petition must be granted.

## I.

Petitioner, a citizen of Cuba, is subject to a final order of removal entered on November 12, 2024. (Doc. 3 at 1–2). On September 27, 2025, ICE took Petitioner into custody. (*Id.* at 2). He filed the instant case on May 11, 2026.

On May 26, 2026, a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's likelihood of removal. (Doc. 3-3). He explains that Petitioner initially was released from ICE custody on an order of recognizance on February 18, 2022, and his final order of removal was entered on November 12, 2024. (*Id.* at 2). On September 27, 2025, ICE re-detained Petitioner "as there is a significant likelihood that he may be removed in the reasonably foreseeable future." (*Id.*). According to the officer, "ICE intends to remove the [P]etitioner to Mexico." (*Id.*). The officer continues:

2

[Section] 241(b)(2)(E) [of the Immigration and Nationality Act] authorizes the [Department of Homeland Security] to remove aliens subject to final orders of removal to alternative countries, including another country whose government will accept the alien.

The [P]etitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.

On October 19, 2025, October 27, 2025, and on April 07, 2026, the [P]etitioner received a Notice of Removal to Mexico and refused to sign the Notice of Removal.

The receiving ERO field office will then notify Mexico's Instituto Nacional de Migracion (INM) of the [P]etitioner's upcoming removal to Mexico.

Following INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.

Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.

Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future.

ICE will follow proper procedures for third-country removals for the [P]etitioner as set forth in the *Guidance Regarding Third Country Removals*, issued by the [Department of Homeland Security] Secretary on March 30, 2025.

(Doc. 3-3 at 2–3). The Federal Respondents submitted the following documentary evidence in support of their position: I-213 Record of Deportable/Inadmissible Alien dated December 5, 2020 (Doc. 3-1); the immigration judge's November 12, 2024 order (Doc. 3-2); and a "Warning for

3

Failure to Depart" dated February 25, 2026 (Doc. 3-4). They also submitted a screenshot of Petitioner's ICE detention history. (Doc. 3-5).

## II.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The

reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287

5

F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

## III.

Here, Petitioner was taken into ICE custody on September 27, 2025, and he filed this case on May 11, 2026, which was 226 days after his re-detention. Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because "Petitioner has not cooperated with efforts to remove him by repeatedly refusing to sign the Notice of Removal and refusing to sign the I-229 and instruction sheet." (Doc. 3 at 8). They further argue that Petitioner "fails to adduce any evidence that his removal to Mexico is not likely to occur once he signs the required documents." (*Id.* at 10).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's

6

failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[2] ("Because Petitioner is responsible for thwarting his removal, he cannot show

---

[2] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

Here, the Federal Respondents have not shown that Petitioner's failure to sign was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his failure to sign otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The only document submitted by the Federal Respondents that Petitioner refused to sign is a document advising him of the consequences of his failure to depart and instructions regarding his requirement to assist in his removal—not an application for travel documents or forms that would otherwise appear to assist in his removal. (*See* Doc. 3-4). And while the Federal Respondents state that Petitioner's signature on the notices of removal is "required to begin the process of staging Petitioner for removal to Mexico," (Doc. 3 at 8), they fail to provide any support for that statement. In fact, there is no indication in the record that Petitioner has signed such a notice; thus, if his signature is required to begin the process of staging him for removal to Mexico, then it is

8

even more unclear how ICE can contend "there is a significant likelihood of removal in the reasonably foreseeable future." (Doc. 3-3 at 3). Simply put, the Federal Respondents fail to support their position. Thus, the Court finds that Petitioner's failure to sign the documents does not warrant application of § 1231(a)(1)(C).

As previously noted, Petitioner filed this case more than 180 days after his re-detention and, therefore, he meets the first part of his burden. The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2024, and ICE re-detained him more than ten months later; he alleges that he "cannot go back to Cuba" and despite being detained for more than six months, ICE has not provided a "clear timeline or evidence that [his] removal will occur in the reasonably foreseeable future." (Doc. 1 at 7). Petitioner has now been detained for more than nine months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

The deportation officer's declaration merely describes the general process for third-country removals to Mexico—there is no specific timeline provided for Petitioner's alleged removal. Nor is there any indication about

whether Mexico will provide "final acceptance" of Petitioner. (Doc. 3-3 at 2 ("Following INM's final acceptance . . . .")). Petitioner has now been in ICE custody for more than nine months—over three months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release").

Accordingly, it is **ORDERED**:

1. The **Clerk** shall update Petitioner's address to Central Valley Annex, 254 Taylor Ave., McFarland, CA 93250.

2. Given Petitioner's transfer to a detention facility in California, the Warden's motion to dismiss (Doc. 5) is **DENIED as moot**.

3. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim. Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

4. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on July 15, 2026.

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Omar Alejandro Vasconcelos Ruiz
Counsel of Record

11